IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORGE LUIS ROQUE, | : | |
| | : | |
| Plaintiffs | : | CIVIL NO. 1:16-CV-01032 |
| | : | |
| vs. | : | |
| | : | |
| DEPARTMENT OF CORRECTION | : | (Judge Rambo) |
| LEBANON COUNTY | : | |
| CORRECTIONAL FACILITY, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

## Background

On May 13, 2016, Jorge Luis Roque, an inmate
confined at the State Correctional Institution at
Houtzdale, located in Houtzdale, Pennsylvania ("SCI-
Houtzdale"), filed a pro se civil rights complaint
pursuant to 42 U.S.C. § 1983. (Doc. 1.) Roque claims
that he was assaulted by three other inmates while
housed at the Lebanon County Correctional Facility
during the months of October and November, 2015, and
that he received inadequate medical care for the
injuries he sustained.(Id.)

In the caption of the complaint as well as the body of the complaint Roque names the following individuals allegedly employed at the Lebanon County Correctional Facility: (1) Robert J. Karnes, Warden; (2) John Santoni, Sergeant; and (3) Dustin Gonzalez, (4) Tim Fierro and (5) Nick Derr, correctional officers. (Id.) Roque also names as a defendant the Lebanon County Correctional Facility. (Id.)

Beyond naming Defendants Karnes, Fierro and Derr, Roque does not set forth in the complaint any factual allegations against them. (Id.)  With respect to Defendant Gonzalez, Roque claims that he told Defendant Gonzalez that he could not be placed on Block 2 because he had enemies on Block 2 and that his safety would be in jeopardy if placed on that block. (Id. at 2.) However, there is no indication that Defendant Gonzalez placed Roque on Block 2. (Id. at 2-3.)  Instead, Roque alleges that Defendant Gonzalez placed him in the "Security Housing Unit" ("SHU") and that he ultimately was found guilty of a misconduct for "refusing to lock up by the Disciplinary Board on October 16, 2015, and

2

sentenced to 20 days of confinement." (Id.) Roque then alleges that he was released from the SHU on November 2, 2015. (Id.)

After being released from the SHU, Roque alleges he was escorted to Block 2 and that he informed an unidentified officer he could not be placed on Block 2 because his "enemies" were housed on that block. (Id.) Roque alleges that the unidentified officer informed Defendant Santoni of Roque's concerns about his safety if he was placed on Block 2 but Defendant Santoni told the officer to write Roque up for disobeying an order if he refused to be housed on Block 2. (Id.)  Apparently, when informed that he would be issued a misconduct if he refused to be housed on Block 2, Roque acquiesced and allowed the officer to place him on that block.(Id.) Roque then alleges that he was only on Block 2 for 15 to 20 minutes when three other inmates assaulted him. (Id.) Roque claims that he was repeatedly punched in the face and sustained a broken jaw bone. (Id.)

Roque does not name any medical personnel other than to state that the nurses, physician assistants and

physicians did not provide him with adequate medical care for the broken jaw bone. (Id. at 4-5.) However, he admits that he received medical care and that ultimately on November 24, 2015, he underwent surgery at the Hershey Medical Center. (Id.)

Along with the complaint, Roque filed an authorization to have funds deducted from his prison trust fund account to have the filing fee paid in installments. (Doc. 2.) However, Roque did not file a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915. On June 3, 2016, an Administrative Order was issued directing Roque within thirty (30) days to either pay the filing fee or file a motion to proceed in forma pauperis.  (Doc. 4.) Subsequently, on June 20, 2016, Roque filed a motion for leave to proceed in forma pauperis. (Doc. 5.)

The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) imposed new obligations on prisoners who file suit in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., the full filing fee

4

ultimately must be paid (at least in a non-habeas suit).
Also, a new section was added which relates to screening
complaints in prisoner actions.[1]  Furthermore, although
there is not a heightened pleading standard with respect
to complaints filed by prisoners, a complaint in order
to comply with Rule 8 of the Federal Rules of Civil
Procedure must contain at least a modicum of factual
specificity, identifying the particular conduct of the
defendants that is alleged to have harmed the plaintiff,
so that the court can determine that the complaint is
not frivolous and a defendant has adequate notice to
frame an answer. A civil rights complaint complies with
this standard if it alleges the conduct violating the
plaintiff's rights, the time and place of that conduct,
and the identity of the responsible officials.

---

1.  Section 1915(e)(2) provides:

>    (2) Notwithstanding any filing fee, or any portion
>    thereof, that may have been paid, the court shall
>    dismiss the case at any time if the court
>    determines that (A) the allegation of poverty is
>    untrue; or (B) the action or appeal (i) is
>    frivolous or malicious; (ii) fails to state a claim
>    on which relief may be granted; or (iii) seeks
>    monetary relief against a defendant who is immune
>    from such relief.

For the reasons outlined below, Roque's motion
for leave to proceed _in forma pauperis_ will be construed
under the PLRA as a motion to proceed without full
prepayment of the filing fee and granted, and Roque's
complaint will be dismissed for failure to state a claim
and he will be granted an opportunity to submit an
amended complaint.

## Discussion

The Supreme Court has recognized that "a finding
of factual frivolousness is appropriate when the facts
alleged rise to the level of the irrational or the
wholly incredible . . . ." _Denton v. Hernandez_, 504
U.S. 25, 33 (1992); _see also_ _Roman_, 904 F.2d at 194
(baseless factual contentions describe scenarios clearly
removed from reality).  The Third Circuit added that
"the plain meaning of 'frivolous' authorizes the
dismissal of _in forma pauperis_ claims that . . . are of
little or no weight, value, or importance, not worthy of
serious consideration, or trivial." _Deutsch v. United
States_, 67 F.3d 1080, 1083 (3d Cir. 1995).  It also has
been determined that "the frivolousness determination is

a discretionary one," and trial courts "are in the best
position" to determine when an indigent litigant's
complaint is appropriate for summary dismissal.  <u>Denton</u>,
504 U.S. at 33.

Even though a complaint is not frivolous it
still may be dismissed under the screening provision of
the PLRA if it fails to state a claim upon which relief
may be granted.  Fed.R.Civ.P. 12(b)(6) is the basis for
this type of dismissal.  Under Rule 12(b)(6), we must
"accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff,
and determine whether, under any reasonable reading of
the complaint, the plaintiff may be entitled to relief."
<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d
Cir.2009)(quoting <u>Phillips v. County of Allegheny</u>, 515
F.3d 224, 231 (3d Cir.2008)). While a complaint need
only contain "a short and plain statement of the claim,"
Fed.R.Civ.P. 8(a)(2), and detailed factual allegations
are not required, <u>Bell Atlantic Corp. v. Twombly</u>, 550
U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929
(2007), a complaint must plead "enough facts to state a

claim to relief that is plausible on its face." Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court  "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

     In resolving the issue of whether a complaint states a viable claim, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has

a "'plausible claim for relief.'" Id. at 211 (quoted
case omitted).

A plaintiff, in order to state a viable § 1983
claim, must plead two essential elements:  1) that the
conduct complained of was committed by a person acting
under color of state law, and 2) that said conduct
deprived the plaintiff of a right, privilege, or
immunity secured by the Constitution or laws of the
United States.  Natale v. Camden County Corr. Facility,
318 F.3d 575, 580-581 (2003);  Groman v. Township of
Manalapan, 47 F.3d 628, 638 (3d Cir. 1995);  Shaw by
Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir.
1990).

A defendant's conduct must have a close causal
connection to plaintiff's injury in order for § 1983
liability to attach.  Martinez v. California, 444 U.S.
277, 285 (1980).[2]  A prerequisite for a viable civil
rights claim is that a defendant directed, or knew of

2.  The Martinez court explained: "Although a § 1983
claim has been described as 'a species of tort
liability,' Imbler v. Pachtman, 424 U.S. 409, 417
[(1976)], it is perfectly clear that not every injury
in which a state official has played some part is
actionable under that statute." Id.

and acquiesced in, the deprivation of a plaintiff's constitutional rights.  See Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

First, a prison is not an entity subject to suit under 42 U.S.C. § 1983. The United States Supreme Court established in Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989), that "a State is not a person within the meaning of § 1983."  Ordinarily, only actual persons are subject to suit under § 1983.  Id. at 71. Furthermore, a prison is not a person within the meaning of § 1983.  Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Smith v. Samuels, 2013 WL 5176742, *4 (M.D.Pa. 2013)("Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability.")(Nealon, J.); see also Ellman v. Prime Care, Inc., 2014 WL 2601728, *2 (M.D.Pa. 2014)(Nealon, J.); Williams v. Lackawanna Count Prison, 2010 WL 1491132, *1 n.2 (M.D.Pa. 2010)(McClure,

J.). Consequently, Roque's claims against the Lebanon County Correctional Facility will be dismissed without leave to amend.

Second, with respect to Defendants Karnes, Gonzalez, Fierro and Derr there are no factual allegations in the complaint from which it could be concluded that those defendants in any way violated Roque's right under the United States Constitution or other federal laws. Clearly, the complaint as it relates to those defendants fails to meet the pleading requirements of Rule 8, <u>Iqbal</u> and <u>Twombly</u>.

Arguably the claims against Defendant Santoni are based on the Eighth Amendment requirement that prison officials protect an inmate from assaultive behavior engaged in by other inmates.  However, in order for liability to attach the prison official must be deliberately indifferent to the need for security or safety measures to protect the inmate.

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been

interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Although, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).  A plaintiff, however, must prove more than that he had a fight with another inmate, see Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). To succeed, a prisoner must show that: (1) he was incarcerated under conditions

posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known. "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious. The Farmer Court

13

explained in hypothetical terms the type of
circumstantial evidence sufficient for a finding of
actual knowledge on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents
> evidence showing that a substantial risk of
> inmate attacks was 'longstanding, pervasive,
> well-documented, or expressly noted by prison
> officials in the past,' and the circumstances
> suggest that the defendant-official being sued
> had been exposed to information concerning the
> risk and thus 'must have known' about it, then
> such evidence could be sufficient to permit a
> trier of fact to find that the defendant-
> official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43. Farmer, 511 U.S. at 842-43.

Roque does not specify the inmates who assaulted
him, why they were a threat to him or what information
was relayed to Defendant Santoni regarding those three
inmates. There are no allegations in the complaint from
which it can be concluded that there was a substantial
risk of Roque being attacked by inmates housed on Block
2 and that Defendant Santoni was exposed to that
information. Consequently, the claim against Defendant
Santoni will be dismissed with leave to file an amended
complaint.

Finally, an inmate can invoke the protections of the Cruel and Unusual Punishments Clause of the Eighth Amendment when he receives inadequate medical care. Roque, however, has failed to identify any of the prison official who provided him with medical care or set forth allegations sufficient to raise a cognizable Eighth Amendment claim.

Claims based upon the Cruel and Unusual Punishments Clause have both objective and subjective components. Wilson v. Seiter, 501 U.S. at 298. Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. Id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind". Id.

The objective component of an Eighth Amendment medical care claim, i.e., whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. Hudson v. McMillian, 503 U.S. 1 (1992). A medical need is serious if it is one that has

15

been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.  1987); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); West v. Keve, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978).  The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.  See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347; Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

Assuming, without deciding, that Roque's medical need was serious in the constitutional sense, the allegations in the complaint reveal that Roque received medical attention.  The allegations contained within the complaint establish efforts by the medical personnel at

Lebanon County Correctional Facility to provide Roque with necessary medical care, and an attendant mental state that falls short of deliberate indifference. Roque received treatment and was ultimately sent to Hershey Medical Center for surgery.[3]

At best, Roque's complaint demonstrates his disagreement with the scope and extent of treatment by the medical providers at Lebanon County Correctional Facility.  Roque's disagreement with the course of treatment, however, does not serve as a predicate to liability under § 1983.  Furthermore, a complaint that a physician or a medical department was  "negligent in diagnosing or treating a medical condition does not

---

3.  Roque in the complaint alleges that alleges that he sought medical care at the prison medical department and that "[e]ach time [he] was attended to by the nurse assistants, Nures (sic), Physician Assistant, and Physician. In each instance, defendants interpreted injury incorrectly and nominally as an injury requiring no further medical intervention. . . . The defendant failed to recognize the significance of plaintiff injury and subsequent error in diagnosis, failing to provide proper care and treatment to plaintiff which should have included additional testing and therapy also surgery."

state a valid claim of medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106.  More than two decades ago, the Third Circuit held that "[w]hile the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  <u>Brown v. Borough of </u>which is in the jurisdiction of the United States District Court for the Western District of Pennsylvania, <u>Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990); <u>see also</u> <u>Spruill</u>, 372 F.3d at 235 ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

When an inmate is provided with medical care and the dispute is over the adequacy of that care, no Eighth Amendment claim exists.  <u>White v. Napoleon</u>, 897 F.2d 103, 108-10 (3d Cir. 1990).  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice[.]"  <u>Estelle</u>, 429 U.S. at 107.  A mere

18

difference of opinion between the inmate and the
prison's medical staff regarding the diagnosis or
treatment that the inmate receives does not support a
claim of cruel and unusual punishment.  See McFadden v.
Lehman, 968 F. Supp. 1001 (M.D. Pa. 1997); Young v.
Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992).
Additionally, a non-physician defendant cannot be
considered deliberately indifferent for failing to
respond to an inmate's medical complaints when the
inmate is already receiving treatment from the prison's
medical staff.  See Durmer v. O'Carroll, 991 F.2d 64, 69
(3d Cir. 1993).  The key question is whether the
defendant has provided the plaintiff with some type of
treatment, despite whether it is what the plaintiff
wants. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D.
pa. 1988).

       It appears that Roque is merely taking issue
with the medical judgment of nurses, physician
assistants and physicians who treated him at Lebanon
County Correctional Facility. In sum, negligence,

19

unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d at 69.

For the reasons set forth above, the instant complaint will be dismissed, without prejudice, for failure to state a claim on which relief may be granted pursuant 28 U.S.C. § 1915(e)(2)(B)(ii).  Although the complaint as filed fails to state a cause of action against the defendants, it is possible that the deficiencies may be remedies by amendment. Consequently, Roque will be granted such opportunity. Roque is also advised that the amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the complaint already filed.  Such amended complaint should set forth his claims in short, concise and plain statements.  It should specify which actions are alleged as to which defendants.  If Roque fails to file an

amended complaint adhering to the standards set forth above, this case will be closed.

An appropriate order will be entered.


 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge


Dated: September 6, 2016